ORIGINAL

(13)
7-5-01
sc

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FILED
HARRISBURG, PA

DERRICK R. COOMBS,           :
           **Plaintiff,**   :

    v.                           :

ROBERT W. MYERS, et al.,     :        No. 1:CV-01-0247

           **Defendants.**  :        **(Judge Rambo)**

JUL 0 3 2001

MARY E. D'ANDREA, CLE
Per _____
      Deputy Clerk

**BRIEF IN SUPPORT OF MOTION OF**
**<u>DEFENDANTS TO DISMISS THE COMPLAINT</u>**

**<u>STATEMENT OF THE CASE</u>**

A.    <u>Facts</u>

Plaintiff, Derrick Coombs, brought this civil action against four employees of

the Pennsylvania Department of Corrections pursuant to the Civil Rights Act of

1871, 42 U.S.C. § 1983. Defendants are Robert Meyers, the Superintendent of the

State Correctional Institution at Rockview ("SCI-Rockview"), Martin Dragovich,

the Superintendent of the State Correctional Institution at Camp Hill ("SCI-Camp

Hill"), Martin Horn, the former Secretary of the Pennsylvania Department of

Corrections, and J. Harvey Bell, a Pardons Case Specialist with the Department of

Corrections. Plaintiff is currently incarcerated at SCI-Camp Hill, serving a sentence

for the crime of rape. Plaintiff seeks declaratory and injunctive relief, as well as

money damages. The complaint presents several claims.

Plaintiff first claims that inmate job assignments in Pennsylvania's correctional institutions constitute involuntary servitude in violation of the Thirteenth Amendment.  Complaint, ¶¶2, 30.  Plaintiff was injured during the course of performing his job duties.  Complaint, ¶2.  He contends that his involuntary employment and the resulting injury constitute "double jeopardy," and, therefore, he is entitled to a pardon.  Complaint, ¶¶3, 31.  Plaintiff named as a defendant J. Harvey Bell, a Pardons Case Specialist, because Bell refused to advocate on behalf of plaintiff or argue plaintiff's theory of entitlement to a pardon.  Complaint, ¶10. Plaintiff also alleges with regard to his work-related injury that defendants conspired to harass him in violation of the Racketeering Influenced and Corrupt Organizations Act, and denied him access to courts by withholding his legal mail.  Complaint, ¶¶9(c), 9(d), 37; see also Plaintiff's "Rule 15(a) Amendment to § 1983 Action." Plaintiff filed and appealed a grievance through the entire Consolidated Inmate Grievance Review System only on the issue of his legal mail.

Plaintiff's next claim involves the Pennsylvania Department of Corrections policy that prohibits inmates from contacting the victims of their crimes.  In order to appeal his conviction, pursue a pardon, and prove his innocence, plaintiff wrote letters to the victim of his crime and asked a minister to visit the victim.  Complaint, ¶¶13, 15.  After defendants ordered plaintiff to cease his communications with the

2

victim, plaintiff received a misconduct report for his continued communications with the victim. Complaint, ¶13. Plaintiff asserts that this policy infringes on his Sixth Amendment rights to confrontation and representation. Complaint, ¶¶11, 35. He also claims that the policy violates his First Amendment right to religious freedom, because the minister allegedly attempted to uphold plaintiff's Christian values in opposition to the alleged lies told by witnesses during plaintiff's prosecution. Complaint, ¶19. Although plaintiff appealed his misconduct report, plaintiff did not file and appeal a grievance with regard to this claim.

Plaintiff further claims that defendants "force" him to participate in a sex offender therapy program that violates plaintiff's Fifth Amendment right against self-incrimination by requiring plaintiff to admit that he committed rape. Complaint, ¶21. Plaintiff believes that he is entitled to parole, but he suggests that he will be denied parole unless he confesses to his crime. Complaint, ¶22. The sex offender program also allegedly violates plaintiff's right to religious freedom by compelling him to lie. Complaint, ¶28. Plaintiff filed a grievance with regard to the sex offender program, and he subsequently exhausted his appeals in the administrative process.

Finally, plaintiff asserts that defendants Meyers and Dragovich do not have legal custody over him, because he construes Federal Rule of Appellate Procedure

3

23(a) to forbid the transfer of plaintiff from one Pennsylvania correctional institution to another while he appealed the denial of his writ of habeas corpus.  Complaint, ¶¶1, 20.  Plaintiff did not file a grievance with regard to this claim.

**B.**    **Procedural History**

Plaintiff filed his complaint on February 7, 2001 and served defendants with process on April 25, 2001.  On June 25, 2001, defendants filed a motion to dismiss the complaint.  This brief supports that motion.

## QUESTIONS PRESENTED

I.     Whether plaintiff failed to exhaust his administrative remedies
       for all but two of his claims.

II.    Whether plaintiff fails to state a viable claim that the sex offender
       therapy program violates his constitutional rights.

III.   Whether plaintiff fails to allege any personal involvement by defendant
       Horn in any unconstitutional conduct.

## ARGUMENT

**I.**    **PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE
          REMEDIES FOR ALL BUT TWO OF HIS CLAIMS.**

Plaintiff presents many claims, but plaintiff only exhausted his administrative remedies for the claims involving the sex offender therapy program and the obstruction of his legal mail.  The remaining counts of the complaint should, therefore, be dismissed.

4

The Prison Litigation Reform Act of 1996 ("PLRA") requires inmates to exhaust administrative remedies prior to filing suit.  The relevant provision states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), as amended.    The Pennsylvania Department of Corrections ("Department") maintains a prisoner grievance system which permits a prisoner to seek review of problems that he or she experiences during the course of confinement.  37 Pa. Code § 93.9(a).  The Department has adopted DC-ADM 804, which sets forth the Consolidated Inmate Grievance Review System.  Plaintiff indicates on the standard Middle District inmate complaint form that he exhausted his administrative remedies on all of his issues, but suggests that his exhaustion "depends on whether they file or reject a grievance."  Complaint, p.1.  Plaintiff also explains that defendants dealt with the issue regarding plaintiff's contact with the victim of his crime by issuing a misconduct.  Id.  Although plaintiff adds that he subsequently filed a grievance with regard to this issue, no such grievance exists, and plaintiff did not exhaust his appeals of this issue through the administrative process.  Not only do plaintiff's remarks suggest that he has not exhausted his administrative remedies on all claims in the complaint, but also defendants' records

5

show that plaintiff has only exhausted his grievance appeals for the two issues of mail tampering and the sex offender therapy program.

In <u>Nyhuis v. Reno</u>, 204 F.3d 65, 67 (3d Cir. 2000), the Third Circuit stated that "the PLRA amended 1997e(a) in such a way as to make exhaustion of all administrative remedies mandatory — whether or not they provide the inmate-plaintiff with the relief he says he desires in his federal action."  (See also <u>Booth v. Churner</u>, 206 F.3d 289 (3d Cir. 2000), <u>aff'd</u>, 532 U.S. __ (2001) ("the Nyhuis rule has even greater force with respect to § 1983 actions.").  In <u>Nyhuis</u> and <u>Booth</u>, the Third Circuit held that because the prisoner "failed . . . to exhaust [his] administrative remedies (rather than those [he] believed would be effective)" before filing his § 1983 action, the District Court appropriately dismissed his actions. <u>Booth</u>, 206 F.3d at 300 (quoting <u>Nyhuis</u>, 204 F.3d at 78).  To the extent that plaintiff failed to exhaust his administrative remedies because he did not believe that money damages were available, the Supreme Court recently confirmed that an inmate seeking only money damages must complete the prison administrative process.  <u>Booth v. Churner</u>, 532 U.S. __ (2001) (copy attached).

Courts have interpreted the plain language of the PLRA to require inmate plaintiffs to show, as a pre-condition to filing a suit, that they have exhausted their administrative remedies.  In <u>Brown v. Toombs</u>, 139 F.3d 1102, 1104 (6th Cir.

6

1998), the Court decided that "[i]n light of the plain mandatory language of the statute regarding exhaustion of remedies, the legislative purpose underlying the plain language, and the sound policy on which it is based, . . . prisoners filing § 1983 cases . . . must allege and show they have exhausted all available state administrative remedies" by attaching to their § 1983 complaint the administrative decision. See also Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532, 535 (7th Cir. 1999) (the statute makes exhaustion a pre-condition to suit). The Third Circuit in Booth affirmed the dismissal of a prisoner's lawsuit, noting that "Booth had taken the first step in the process but *made no showing* that he had taken the second and third steps, which required that he appeal the decision reached by the prison officials in the first step" (emphasis added). Booth, 286 F.3d at 292. Although the Third Circuit has not yet had occasion to decide that inmates must prove their exhaustion of administrative remedies as a pre-condition to filing a lawsuit, the Booth Court's emphasis on what the plaintiff had shown suggests that prisoners must prove that they have appealed all issues through the administrative process before commencing a § 1983 action.

Defendants have a record of plaintiff's appeals through the entire administrative process for the issues involving the sex offender program and the alleged tampering with his mail. There is no record, however, and plaintiff has not

7

shown, that he filed grievances and appeals with regard to the remaining claims presented in the complaint. Plaintiff's remarks on the first page of the Middle District prisoner complaint form reflect some uncertainty as to plaintiff's completion of the grievance process. Plaintiff indicates that he has "all records" of his "numerous grievances," but he neglected to attach these records to his complaint. Even if plaintiff has filed numerous grievances, the denial of such grievances must be appealed to Final Review before plaintiff may commence a lawsuit.

The PLRA precludes plaintiff from pursuing the claims regarding his work-related injury and the pardon to which he believes he is entitled, the alleged block on phone calls, the claim of entitlement to communications with the victim of his crime, the legality of his transfer with pending appeals, and the right to have a minister contact the victim of his crime based on religious expression. Because plaintiff has exhausted only his administrative remedies for the sex offender program and legal mail issues, and has failed to prove that he exhausted administrative remedies for any of the claims, the remaining counts of his complaint should be dismissed.

## II. PLAINTIFF FAILS TO STATE A VIABLE CLAIM THAT THE SEX OFFENDER THERAPY PROGRAM VIOLATES HIS CONSTITUTIONAL RIGHTS.

Plaintiff does not state a viable Fifth Amendment claim, because the sex

offender program is voluntary and does not involve self-incriminating testimony. Plaintiff also has no constitutional right to parole. Accordingly, plaintiff has failed to state a claim that defendants have violated his constitutional rights by encouraging him to participate in the sex offender therapy program.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court has explained that this constitutional guarantee "not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer *official* questions put to him in any other *proceeding*, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" <u>Minnesota v. Murphy</u>, 465 U.S. 420, 426 (1984) (quoting <u>Lefkowitz v. Turley</u>, 414 U.S. 70, 77 (1973)) (emphasis added). Courts have held that incarcerated sex offenders' reduced likelihood of parole for refusing to participate in a prison's sex offender program does not constitute a "penalty" sufficient to compel incriminating speech, especially when the offenders could choose not to participate in the program. <u>See</u>, <u>e.g.</u>, <u>Ainsworth v. Risley</u>, 244 F.3d 209 (1st Cir. 2001). A therapy program with a prison psychologist is neither a proceeding in which official questions would be asked on behalf of the state, nor could the privileged communications between the psychologist and

9

plaintiff be used to incriminate the plaintiff in a later criminal proceeding.

Even if the sex offender program constituted an official proceeding, plaintiff's admission to the crime of rape would not be protected by the Fifth Amendment. Plaintiff admits in paragraph 21 of the complaint that he was convicted of rape. It is well established that once a witness has been convicted for the transactions in question, he is no longer able to claim the privilege of the Fifth Amendment and may be compelled to testify. <u>United States v. Frierson</u>, 945 F.2d 650, 662 n.7 (3d Cir. 1991) (citing <u>Reina v. United States</u>, 364 U.S. 507 (1960)). Plaintiff is a convicted sex offender whom the defendants have encouraged to participate in a sex offender program that is strictly voluntary. Plaintiff recognizes the voluntary nature of the program in paragraph 22 of the complaint, in which plaintiff notes the "admission of guilt" requirement for entry to the program. Such a choice is not characteristic of a program that is forced on all sex offenders. None of the defendants, who are employees of the Pennsylvania Department of Corrections, could deny plaintiff parole for his failure to participate in the program, because such a decision could only be made by the Pennsylvania Board of Probation and Parole.

Even if plaintiff were denied parole as a result of his decision not to participate in the sex offenders therapy program, this denial would not be constitutionally improper. Plaintiff has no federal constitutional right to an early

10

release from incarceration on parole, <u>Greenholtz v. Inmates of Neb. Penal and Correctional Complex</u>, 442 U.S. 1 (1979), nor does Pennsylvania afford plaintiff such a right. <u>Rogers v. Pennsylvania Bd. of Probation and Parole</u>, 724 A.2d 319 (Pa. 1999). Although the Commonwealth of Pennsylvania may not bar parole in retaliation for a prisoner's exercise of his constitutional rights, <u>Burkett v. Love</u>, 89 F.3d 135, 140 (3d Cir. 1996), plaintiff has no right under the Fifth Amendment, because there is no possibility that his admission to rape will be used against him. Accordingly, the denial of parole based on plaintiff's refusal to participate in the sex offender therapy program would be constitutionally permissible.

Plaintiff, therefore, fails to state a claim regarding the sex offender program.

## III.    PLAINTIFF FAILS TO ALLEGE ANY PERSONAL INVOLVEMENT BY DEFENDANT HORN IN ANY UNCONSTITUTIONAL CONDUCT.

Plaintiff includes defendant Horn in this action purely because of Horn's supervisory capacity. Because plaintiff does not allege any personal involvement by defendant Horn in any unconstitutional conduct, the complaint should be dismissed as to defendant Horn.

The Third Circuit has declared that an action may not proceed against a state official on the grounds that he or she had responsibility for supervising others unless the plaintiff alleges with particularity that the official personally directed the

11

conditions or had knowledge of the plaintiff's circumstances and acquiesced in the situation. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). Because the defendant must have been personally involved with plaintiff's circumstances, liability may not be predicated solely on the operation of <u>respondeat superior</u>. <u>Id</u>. Plaintiff's only claim against defendant Horn is that he "has failed to properly train, supervise or control his employees . . ." Plaintiff explains that defendant Horn "refuses to answer plaintiff's correspondence, and has at all times referred said correspondence to subordinates, who do nothing." Complaint, ¶29. Plaintiff does not allege that Horn has done anything personally with regard to the plaintiff. Plaintiff instead reveals that Horn knows nothing about plaintiff's allegations, because Horn's subordinates have dealt with plaintiff. Plaintiff named Horn as a defendant solely because of his title as Secretary of the Department of Corrections, and not because he was personally involved with plaintiff's circumstances.

The complaint must, therefore, be dismissed as to defendant Martin Horn.

## **CONCLUSION**

For each of the foregoing reasons, defendants' motion to dismiss should be granted as to defendant Horn, the claim regarding the sex offender therapy program, and every claim for which plaintiff has not exhausted his administrative remedies.

Respectfully submitted,

D. MICHAEL FISHER
Attorney General

By: *Patrick S. Cawley*
PATRICK S. CAWLEY
Deputy Attorney General
Attorney I.D. 85575

SUSAN J. FORNEY
Chief Deputy Attorney General
Chief, Litigation Section

COUNSEL FOR DEFENDANTS

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA  17120
(717) 705-8572
Fax: (717) 772-4526

DATE: July 3, 2001

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 99–1964

### TIMOTHY BOOTH, PETITIONER *v.*
### C. O. CHURNER ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[May 29, 2001]

JUSTICE SOUTER delivered the opinion of the Court.

The Prison Litigation Reform Act of 1995 amended 42
U. S. C. §1997e(a), which now requires a prisoner to ex-
haust "such administrative remedies as are available"
before suing over prison conditions. The question is
whether an inmate seeking only money damages must
complete a prison administrative process that could pro-
vide some sort of relief on the complaint stated, but no
money. We hold that he must.

I

Petitioner, Timothy Booth, was an inmate at the State
Correctional Institution at Smithfield, Pennsylvania,
when he began this action under Rev. Stat. §1979, 42
U. S. C. §1983, in the United States District Court for the
Middle District of Pennsylvania. He claimed that respon-
dent corrections officers at Smithfield violated his Eighth
Amendment right to be free from cruel and unusual pun-
ishment by assaulting him, bruising his wrists in tight-
ening and twisting handcuffs placed upon him, throwing
cleaning material in his face, and denying him medical
attention to treat ensuing injuries. Booth sought various

forms of injunctive relief, including transfer to another prison, as well as several hundred thousand dollars in money damages.

The Pennsylvania Department of Corrections provided an administrative grievance system at the time. It called for a written charge within 15 days of an event prompting an inmate's complaint, which was referred to a grievance officer for investigation and resolution. If any action taken or recommended was unsatisfactory to the inmate, he could appeal to an intermediate reviewing authority, with the possibility of a further and final appeal to a central review committee. App. 46–50. While the grievance system addressed complaints of the abuse and excessive force Booth alleged, it had no provision for recovery of money damages.[1]

Before resorting to federal court, Booth filed an administrative grievance charging at least some of the acts of abuse he later alleged in his action. *Id.*, at 10–14. He did not, however, go beyond the first step, and never sought intermediate or final administrative review after the prison authority denied relief.

Booth's failure to avail himself of the later stages of the administrative process led the District Court to dismiss the complaint without prejudice for failure to exhaust "administrative remedies . . . available" within the meaning of 42 U. S. C. §1997e(a) (1994 ed., Supp. V). See App. to Pet. for Cert. 38a. The Court of Appeals for the Third Circuit affirmed, 206 F. 3d 289 (2000), rejecting Booth's argument that the statutory exhaustion requirement is inapposite to his case simply because the State's administrative process could not award him the monetary relief he sought (money then being the only relief still requested,

---

[1]The State has since modified its grievance scheme to permit awards of money. App. 60.

Opinion of the Court

since Booth's transfer to another institution had mooted his claims for injunctive orders).[2]  Although the Third Circuit acknowledged that several other Courts of Appeals had held the exhaustion requirement subject to exception when the internal grievance procedure could not provide an inmate-plaintiff with the purely monetary relief requested in his federal action, see, *e.g.*, *Whitley* v. *Hunt*, 158 F. 3d 882 (CA5 1998); *Lunsford* v. *Jumao-As*, 155 F. 3d 1178 (CA9 1998); *Garrett* v. *Hawk*, 127 F. 3d 1263 (CA10 1997), the court found no such exception in the statute, 206 F. 3d, at 299–300; accord, *Freeman* v. *Francis*, 196 F. 3d 641 (CA6 1999); *Alexander* v. *Hawk*, 159 F. 3d 1321 (CA11 1998).  We granted certiorari to address this conflict among the Circuits, 531 U. S. 956 (2000), and we now affirm.

## II

In the aftermath of the Prison Litigation Reform Act of 1995,[3] 42 U. S. C. §1997e(a) (1994 ed., Supp. V) provides that

> "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The meaning of the phrase "administrative remedies . . . available" is the crux of the case, and up to a point the parties approach it with agreement.  Neither of them

---

[2] There is some uncertainty, probably stemming in part from the ambiguity of Booth's *pro se* filings in District Court, as to whether all of Booth's claims for relief other than money damages became moot when he was transferred.  See Brief for Petitioner 12, n. 7; Brief for United States as *Amicus Curiae* 10, n. 2.  We assume for present purposes that only Booth's claims for money damages remain.

[3] 110 Stat. 1321, as renumbered and amended.

Opinion of the Court

denies that some redress for a wrong is presupposed by the statute's requirement of an "available" "remed[y]"; neither argues that exhaustion is required where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint.[4]  The dispute here, then, comes down to whether or not a remedial scheme is "available" where, as in Pennsylvania, the administrative process has authority to take some action in response to a complaint, but not the remedial action an inmate demands to the exclusion of all other forms of redress.

In seeking the congressional intent, the parties urge us to give weight to practical considerations, among others, and at first glance Booth's position holds some intuitive appeal.  Although requiring an inmate to exhaust prison grievance procedures will probably obviate some litigation when the administrative tribunal can award at least some of the relief sought, Booth argues that when the prison's process simply cannot satisfy the inmate's sole demand, the odds of keeping the matter out of court are slim.  See Reply Brief for Petitioner 16.  The prisoner would be clearly burdened, while the government would obtain little or no value in return.  The respondents, however, also have something to say.  They argue that requiring exhaustion in these circumstances would produce administrative results that would satisfy at least some inmates who start out asking for nothing but money, since the very fact of being heard and prompting administrative change can mollify passions even when nothing ends up in the pocket.

---

[4] Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust.  The parties do not dispute that the state grievance system at issue in this case has authority to take some responsive action with respect to the type of allegations Booth raises.

Opinion of the Court

And one may suppose that the administrative process itself would filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding.  Although we have not accorded much weight to these possibilities in the past, see *McCarthy* v. *Madigan*, 503 U. S. 140, 155–156 (1992), Congress, as we explain below, may well have thought we were shortsighted.  See *infra*, at 7-9.  In any event, the practical arguments for exhaustion at least suffice to refute Booth's claim that no policy considerations justify respondents' position.  The upshot is that pragmatism is inconclusive.

Each of the parties also says that the plain meaning of the words "remedies" and "available" in the phrase "such administrative remedies . . . available" is controlling.  But as it turns out both of them quote some of the same dictionary definitions of "available" "remedies," and neither comes up with anything conclusive.  Booth says the term "remedy" means a procedure that provides redress for wrong or enforcement of a right, and "available" means having sufficient power to achieve an end sought.  See Brief for Petitioner 15–16 (citing Webster's Third New International Dictionary 150, 1920 (1993) (defining "remedy" as "the legal means to recover a right or to prevent or obtain redress for a wrong" and "available" as "having sufficient power or force to achieve an end," "capable of use for the accomplishment of a purpose," and that which "is accessible or may be obtained")).  So far so good, but Booth then claims to be able to infer with particularity that when a prisoner demands money damages as the sole means to compensate his injuries, a grievance system without that relief offers no "available" "remed[y]."  The general definitions, however, just do not entail such a specific conclusion.

It strikes us that the same definitions get the respondent corrections officers and their *amicus* the United

States closer to firm ground for their assertion that the phrase "such administrative remedies as are available" naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands. See Brief for Respondents 21. The United States tracks Booth in citing Webster's Third New International Dictionary to define "remedy" as "the legal means to recover a right or to prevent or obtain redress for a wrong" and "available" as "capable of use for the accomplishment of a purpose." Webster's Third New International Dictionary, *supra,* at 150, 1920. But this exercise in isolated definition is ultimately inconclusive, for, depending on where one looks, "remedy" can mean either specific relief obtainable at the end of a process of seeking redress, or the process itself, the procedural avenue leading to some relief. See Black's Law Dictionary 1296 (7th ed. 1999) (defining "remedy" alternatively as "[t]he means of enforcing a right or preventing or redressing a wrong," or as "REMEDIAL ACTION; . . . Cf. RELIEF").

We find clearer pointers toward the congressional objective in two considerations, the first being the broader statutory context in which "available" "remedies" are mentioned. The entire modifying clause in which the words occur is this: "until such administrative remedies as are available have been exhausted." The "available" "remed[y]" must be "exhausted" before a complaint under §1983 may be entertained. While the modifier "available" requires the possibility of some relief for the action complained of (as the parties agree), the word "exhausted" has a decidedly procedural emphasis. It makes sense only in referring to the procedural means, not the particular relief ordered. It would, for example, be very strange usage to say that a prisoner must "exhaust" an administrative order reassigning an abusive guard before a prisoner could go to court and ask for something else; or to say (in States

Opinion of the Court

that award money damages administratively) that a prisoner must "exhaust" his damages award before going to court for more. How would he "exhaust" a transfer of personnel? Would he have to spend the money to "exhaust" the monetary relief given him? It makes no sense to demand that someone exhaust "such administrative [redress]" as is available; one "exhausts" processes, not forms of relief, and the statute provides that one must.

A second consideration, statutory history, confirms the suggestion that Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible. Before §1997e(a) was amended by the Act of 1995, a court had discretion (though no obligation) to require a state inmate to exhaust "such . . . remedies as are available," but only if those remedies were "plain, speedy, and effective." 42 U. S. C. §1997e(a) (1994 ed.). That scheme, however, is now a thing of the past, for the amendments eliminated both the discretion to dispense with administrative exhaustion and the condition that the remedy be "plain, speedy, and effective" before exhaustion could be required.

The significance of deleting that condition is apparent in light of our decision two years earlier in *McCarthy* v. *Madigan, supra.* In *McCarthy*, a federal inmate, much like Booth, sought only money damages against federal prison officials, and the Bureau of Prison's administrative procedure offered no such relief. Although §1997e(a) did not at that time apply to suits brought against federal officials, the government argued that the Court should create an analogous exhaustion requirement for *Bivens* actions. See *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971). It proposed §1997e(a) as a model, on the assumption that the provision required exhaustion by those seeking nothing but money damages even when money was unavailable at the administrative

Opinion of the Court

level. We understood the effect of §1997e(a) to be quite different, however. See 503 U. S., at 149–151. In holding that exhaustion was not required, we reasoned in part from the language of §1997e(a) that required an "effective" administrative remedy as a precondition to exhaustion. *Id.*, at 150. When a prisoner sought only money damages, we indicated, only a procedure able to provide money damages would be "effective" within the meaning of the statute. *Ibid.* ("[I]n contrast to the absence of any provision for the award of money damages under the Bureau's general grievance procedure, the statute conditions exhaustion on the existence of 'effective administrative remedies'"); see also *id.*, at 156 (REHNQUIST, C. J., joined by SCALIA and THOMAS, JJ., concurring in judgment) ("[I]n cases . . . where prisoners seek monetary relief, the Bureau's administrative remedy furnishes no effective remedy").

When Congress replaced the text of the statute as construed in *McCarthy* with the exhaustion requirement at issue today, it presumably understood that under *McCarthy* the term "effective" in the former §1997e(a) eliminated the possibility of requiring exhaustion of administrative remedies when an inmate sought only monetary relief and the administrative process offered none. It has to be significant that Congress removed the very term we had previously emphasized in reaching the result Booth now seeks, and the fair inference to be drawn is that Congress meant to preclude the *McCarthy* result.[5] Congress's impo-

---

[5] This inference is, to say the least, also consistent with Congress's elimination of the requirement that administrative procedures must satisfy certain "minimum acceptable standards" of fairness and effectiveness before inmates can be required to exhaust them, and the elimination of courts' discretion to excuse exhaustion when it would not be "appropriate and in the interests of justice." Compare 42 U. S. C. §1997e(a) (1994 ed., Supp. V) with 42 U. S. C. §1997e(a) (1994 ed.).

sition of an obviously broader exhaustion requirement makes it highly implausible that it meant to give prisoners a strong inducement to skip the administrative process simply by limiting prayers for relief to money damages not offered through administrative grievance mechanisms.

Thus, we think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures.[6] Cf. *McCarthy, supra,* at 144 ("Where Congress specifically mandates, exhaustion is required"). We accordingly affirm the judgment of the Third Circuit.

*It is so ordered.*

---

[6]That Congress has mandated exhaustion in either case defeats the argument of Booth and supporting *amici* that this reading of §1997e (1994 ed., Supp. V) is at odds with traditional doctrines of administrative exhaustion, under which a litigant need not apply to an agency that has "no power to decree . . . relief," *Reiter* v. *Cooper,* 507 U. S. 258, 269 (1993), or need not exhaust where doing so would otherwise be futile. See Brief for Petitioner 24–27; Brief for Brennan Center for Justice et al. as *Amici Curiae.* Without getting into the force of this claim generally, we stress the point (which Booth acknowledges, see Reply Brief for Petitioner 4) that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise. See *McCarthy* v. *Madigan,* 503 U. S. 140, 144 (1992); cf. *Weinberger* v. *Salfi,* 422 U. S. 749, 766–767 (1975). Here, we hold only that Congress has provided in §1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DERRICK R. COOMBS,               :
                      **Plaintiff,**   :
                                 :

  **v.**               :

ROBERT W. MYERS, et al.,         :          No. 1:CV-01-0247
                                 :

                **Defendants.**   :          **(Judge Rambo)**

## CERTIFICATE OF SERVICE

I, **PATRICK S. CAWLEY**, Deputy Attorney General for the

Commonwealth of Pennsylvania, hereby certify that on July 3, 2001, I caused to be

served the foregoing Brief in Support of Motion of Defendants to Dismiss the

Complaint by depositing a copy in the United States mail, postage prepaid, and

addressed as follows:

Derrick Coombs, CT-1800
SCI-Camp Hill
2500 Lisburn Road
P.O. Box 8837
Camp Hill, PA 17001-8837


                                        _Patrick S. Cawley_
                                      **PATRICK S. CAWLEY**
                                      **Deputy Attorney General**